No. 21-2329

_____

*In the*

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

_____

### CLAIMANT-APPELLANT'S PRINCIPAL BRIEF

*Re*

_____

## NORMAN F. THORNTON,

Claimant-Appellant,

*versus*

## DENIS MCDONOUGH,
Secretary of Veterans Affairs,

Respondent-Appellee.

_____

### ON APPEAL FROM THE
### UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS
### IN VET. APP. NO. 20-882, JUDGE JOSEPH L. FALVEY, JR.

_____

**KENNETH M. CARPENTER**
Carpenter, Chartered
1525 Southwest Topeka Boulevard
Post Office Box 2099
Topeka, Kansas 66601
785-357-5251

Attorney for Claimant-Appellant

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

THORNTON V. DVA, Fed. Cir. No. 21-2329

**Certificate of Interest**

Counsel for the Claimant-Appellant certifies the following information is accurate and complete to the best of my knowledge:

1.    **Represented Entities.  Fed. Cir. R. 47.4(a)(1).**

The full name of all entities represented by undersigned counsel in this case:

Norman F. Thornton.

2.    **Real Party in Interest.  Fed. Cir. R. 47.4(a)(2).**

Full names of all real parties in interest for the entities.  (Do not list the real parties if they are the same as the entities):

Same.

3.    **Parent Corporations and Stockholders.  Fed. Cir. R. 47.4(a)(3).**

Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more of stock in the entities:

None.

4.    **Legal Representatives.  Fed. Cir. R. 47.4(a)(4).**

List all law firms, partners and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this Court  for the entities.  (Do not include those who have already entered an appearance in

this court):

None.

5.      **Related Cases.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).**

The case titles and numbers of any case known to be pending in this court or

any other court or agency that will directly affect or be directly affected by this

court's decision in the pending appeal:

None.

6.      **Organizational Victims and Bankruptcy Cases.  Fed. Cir. R. 47.4(a)(6).**

Any information required under Fed. R. App. P. 26.1(b) (organizational victims

in criminal cases) and 26.1( c) (bankruptcy case debtors and trustees):

None.


Date: January 10, 2022                    /s/ Kenneth M. Carpenter
                                          Kenneth M. Carpenter
                                          CARPENTER, CHARTERED
                                          1525 SW Topeka Blvd, P.O. Box 2099
                                          Topeka, Kansas 66601-2099
                                          (785) 357-5251
                                          carpgh@mindspring.com

# Table of Contents

**Page**

Certificate of Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-ii

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-iv

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v-viii

Statement of Related Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

Statement of Subject-Matter and Appellate Jurisdiction. . . . . . . . . . . . . . . . . . . 1

Statement of the Issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.    Nature of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     B.    Statement of Facts, Course of Proceedings and Disposition Below. . . 2

Summary of the Arguments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Arguments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     I.    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     II.    The Veterans Court misinterpreted 38 U.S.C. § 7261(b)(1)
         by failing to enforce its mandate that it explicitly take due
         account of the Secretary's application of 38 U.S.C. § 5107(b). . . . . . . . . 6

         A.    The Statutory Framework. . . . . . . . . . . . . . . . . . . . . . . . . . . 7

         B.    Section 7261(b)(2) is plain on its face and must be
              applied by the Veterans Court in every appeal. . . . . . . . . . . . . 15

         C.    Under the correct interpretation of § 7261(b)(1),
              the Veterans Court must take due account of the
              Secretary's application of § 5107(b). . . . . . . . . . . . . . . . . . . . 19

**Page**

D.    The Veterans Court must make a non-deferential
*de novo* review of the Secretary's application of § 5107(b)...... 25

Conclusion........................................................ 28

Addendum - CAVC Memorandum Decision. .............................. 30

Certificate of Service............................................. 31

Certificate of Compliance.......................................... 31

# Table of Authorities

Page

## Decisions

*AB v. Brown*, 6 Vet. App. 35 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Am. Tobacco Co. v. Patterson*, 456 U.S. 63 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Artis v. District of Columbia*, 138 S. Ct. 594 (2018). . . . . . . . . . . . . . . . . . . . . . . . . . .   24

*Bradley v. Peake*, 22 Vet. App. 280 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). . . . . . . . . .   24

*Collaro v. West*, 136 F.3d 1304 (Fed. Cir. 1998).. . . . . . . . . . . . . . . . . . . . . . . . .   17, 27

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992).. . . . . . . . . . . . . . . . . . . . . . . . .   12

*Conway v. Principi*, 353 F.3d 1369 (Fed Cir 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

*Cook v. Principi*, 318 F.3d 1334 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*DAV v. Principi*, 327 F.3d 1339 (Fed Cir 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Deloach v. Shinseki*, 704 F.3d 1370 (Fed. Cir. 2013).. . . . . . . . . . . . . . . . . . . . . . .   15, 16

*Frederick v. Shinseki*, 684 F.3d 1263 (Fed. Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . .   24

*Forshey v. Principi*, 284 F.3d 1335 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Gilbert v. Derwinski*, 1 Vet. App. 49 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

*Hayre v. West*, 188 F.3d 1327 (Fed. Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Henderson v. Shinseki*, 563 U.S. 428, 131 S. Ct. 1197 (2011). . . . . . . . . . . . . . .   17, 18, 25

**Page**

*Hensley v. West*, 212 F.3d 1255 ( Fed. Cir 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

*Hodge v. West*, 155 F.3d 1356 (Fed. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . .   17, 27

*Kelly v. Nicholson*, 463 F.3d 1349 (Fed. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . .   22

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

*Lynch v. McDonough*, 999 F.3d 1391 (2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23, 24

*Morgan v. Wilkie*, 31 Vet. App. 162 (2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Moskal v. United States*, 498 U.S. 103 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

*Ortiz v. Principi*, 274 F.3d 1361 (Fed. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Prenzler v. Derwinski*, 928 F.2d 392 (Fed. Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . .   6

*Princess Cruises, Inc. v. United States*, 201 F.3d 1352 (Fed. Cir. 2000). . . . . . . . . . . . . .   15

*Richards v. United States*, 369 U.S. 1 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10-11

*Smith v. Brown*, 35 F.3d 1516 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Smith v. United States*, 113 S.Ct. 2050 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Stowers v. Shinseki*, 26 Vet. App. 550 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Tatum v. Shinseki*, 23 Vet. App. 152 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*United States v. Oregon*, 366 U.S. 643 (1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

**Statutes**

38 U.S.C. § 5107(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

38 U.S.C. § 7104(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

**Page**

38 U.S.C. § 7252(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

38 U.S.C. § 7252(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 13, 14

38 U.S.C. § 7261. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 17, 20

38 U.S.C. § 7261(a). . . . . . . . . . . . . . . . . . . . . 3, 5, 8, 9, 14, 17, 22, 23, 28

38 U.S.C. § 7261(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

38 U.S.C. § 7261(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

38 U.S.C. § 7261(b) (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

38 U.S.C. § 7261(b) (2002). . . . . . . . . . . . . . . . . . . . . . 5, 8, 9, 10, 19, 27

38 U.S.C. § 7261(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

38 U.S.C. § 7261(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

38 U.S.C. § 7292(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

38 U.S.C. § 7292( c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

38 U.S.C. §7292(d)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

38 U.S.C. §7292(e)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Regulations**

38 C.F.R. § 3.102. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

38 C.F.R. § 3.103(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 21

**Page**

38 C.F.R. § 4.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 5, 22

38 C.F.R. § 4.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5, 22

**Other**

50 Fed.Reg. 34458 (Aug. 26, 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

66 Fed.Reg. 45630 (Aug. 29, 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

Administrative Procedures Act ("APA"). . . . . . . . . . . . . . . . . . . . . . . . . .   8, 10, 20

Veterans Benefits Act of 2002, Pub. L. No. 107-330, Section 402,
116 Stat. 2820. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

## Statement of Related Cases

Pursuant to Fed. Cir. R. 47.5, the undersigned counsel states that no other appeal has been taken in this case in or from the United States Court of Appeals for Veterans Claims before this Court or any other appellate court.

Undersigned counsel further states that he is unaware of any cases pending before this Court which would directly affect this Court's decision in this appeal.

/s/ Kenneth M. Carpenter
Kenneth M. Carpenter
**CARPENTER, CHARTERED**
1525 SW Topeka Blvd, P.O. Box 2099
Topeka, Kansas 66601-2099
(785) 357-5251
carpgh@mindspring.com

## Statement of Subject-Matter and
## Appellate Jurisdiction

On June 11, 2021, the United States Court of Appeals for Veterans Claims ("Veterans Court") issued a Memorandum Decision that affirmed the decision of the Board of Veterans' Appeals ("Board") dated January 23, 2019. On September 3, 2021, Mr. Thornton timely appealed the Veterans Court decision to this Court. This Court has jurisdiction to review this decision pursuant to 38 U.S.C. §§ 7292(a), (c). The issues on appeal are entirely issues of law. The Veterans Court decision appealed from is final.

## Statement of the Issue

**Whether the Veterans Court misinterpreted the mandatory provisions of 38 U.S.C. § 7261(b)(1) requiring that Court to explicitly take due account of the Secretary's application of 38 U.S.C. § 5107(b)?**

## Statement of the Case

**A.    Nature of the Case.**

This appeal presents an issue of first impression regarding the requirements imposed by Congress on the Veterans Court in 38 U.S.C. § 7261(b)(1), which mandate that the Veterans Court to take due account of the Secretary's application of 38 U.S.C. § 5107(b) and the standard of review required for such consideration by the Veterans Court.

**B.    Statement of the Facts, Course of Proceedings and Disposition Below.**

Mr. Thornton is seeking the next highest rating for his service-connected disability from post-traumatic stress disorder ("PTSD").  On February 23, 2015, he submitted to VA a claim for increased compensation for the next highest rating for his PTSD. Appx21-23.[1]  On December 30, 2015, VA issued a rating decision denying Mr. Thornton the next highest PTSD rating.  Appx24-29.  On December 14, 2016, he filed a notice of disagreement ("NOD") with VA's decision denying him the next highest rating for his PTSD disability.  Appx30-37.

In response, the VA issued a statement of the case ("SOC") dated December 20, 2016.  Appx38-72.   On February 15, 2017, Mr. Thornton completed his appeal. Appx73-74.  On September 25, 2017, VA issued a supplemental SOC continuing the 50-percent PTSD rating assigned.   Appx75-82.  On January 23, 2019, the Board issued its decision denying an increased rating for Mr. Thornton's service-connected PTSD disability.   Appx83-101.   On May 14, 2019, Mr. Thornton filed a motion for reconsideration of the Board's decision to deny him an evaluation higher than 50 percent for his PTSD disability.  Appx102-104.  The Board issued a ruling denying the motion on  October 15, 2019, finding that the Board's decision did not contain an obvious error of fact or law.  Appx105-108.

---

[1] References to the Joint Appendix to be filed by the Appellant with his reply brief are cited as "Appx____ ."

On February 5, 2019, Mr. Thornton appealed to the Veterans Court, which issued its June 11, 2021 Memorandum Decision to affirm the Board's final adverse decision. Appx1-13. On September 3, 2021, Mr. Thornton timely appealed the Veterans Court decision to this Court. Appx15.

## Summary of the Arguments

When Congress enacted the provisions of 38 U.S.C. § 7261(b)(1) it included a mandate to the Veterans Court that is unambiguous. Pursuant to § 7261(b)(1), the Veterans Court is required to take due account of the Secretary's application of the provisions of 38 U.S.C. § 5107(b) when it conducts judicial review of the Secretary's decision under the provisions of 38 U.S.C. § 7252(b). However, the Veterans Court did not take due account of the Secretary's application of § 5107(b). As result, Mr. Thornton was prejudiced because he did not receive a nondeferential *do novo* review by the Veterans Court, as required by § 7261(b)(1), of the Secretary's application of § 5107(b).

Mr. Thornton reads the unambiguous language used by Congress in the text of § 7261(b)(1) to require the Veterans Court, after engaging in its § 7261(a) review of a Board decision, to take due account of **<u>the Secretary's</u>** application of § 5107(b). The reviews undertaken by the Veterans Court under § 7261(a) and § 7261(b)(1) are separate and distinct. In a § 7261(a) review, Congress requires of the Veterans Court the traditional review for errors of fact or law made by the Board. In the Veterans Court's review pursuant to § 7261(b)(1) Congress requires a final review under this statute before

-3-

judicial review is complete. The purpose of the final review under § 7261(b)(1) of the Secretary's application of § 5107(b) is to confirm that the Secretary afforded the claimant the benefit of the doubt on every issue material to the determination of the matter. This review must be non-deferential to ensure that the provisions of § 5107(b) have been properly applied by the Secretary based on the proceedings of record. This review is a *de novo*, non-deferential review because otherwise the Veterans Court would not be taking due account of the Secretary's application of § 5107(b) as required by Congress.

Mr. Thornton's appeal arose when he sought the next higher rating for his service-connected disability from PTSD. The Secretary has promulgated a statement of regulatory policy which unambiguously provides that it is the obligation of VA to assist a claimant in developing the facts pertinent to the claim and to render a decision which grants every benefit that can be supported in law while protecting the interests of the Government. 38 C.F.R. § 3.103(a). This policy has been recognized repeatedly by the Veterans Court as the "duty to maximize." Additionally, the Secretary has promulgated regulations which are specific to the assignment of ratings for service-connected disabilities. In particular, the provisions of 38 C.F.R. § 4.3 further expands VA's duty to maximize in the context of ratings by unambiguously stating that it is "the defined and consistently applied policy of the VA to administer the law under a broad interpretation, consistent, however, with the facts shown in every case and requiring that when reasonable doubt arises regarding the degree of disability such doubt will be resolved in

favor of the claimant." *See* 38 C.F.R. § 4.3. In addition, the provisions of 38 C.F.R. § 4.7

provide that where there is a question as to which of two evaluations shall be applied,

the higher evaluation will be assigned if the disability picture more nearly approximates

the criteria required for that rating.

Each of the three foregoing regulations are in accordance with, and in aid of the

"benefit of the doubt" mandate by Congress as set out in 38 U.S.C. § 5107(b). That is,

when there is an approximate balance of positive and negative evidence regarding any

issue material to the determination of a matter, the Secretary shall give the benefit of the

doubt to the claimant. *See* 38 U.S.C. § 5107(b). Based on all of these provisions of law,

it is fair to say that Congress's overarching expectation of VA regarding every issue

material to the determination of a matter is that every claimant will be afforded the

benefit of the doubt.

Therefore, consistent with this overarching expectation, it follows that Congress,

in amending the provisions of 38 U.S.C. § 7261(b) in 2002, intended to require the

Veterans Court, in every decision it reviews, to take due account of the Secretary's

application of the provisions of 38 U.S.C. § 5107(b). However, in Mr. Thornton's case,

it is evident from the Veterans Court's decision on appeal that, even though asked to do

so, it did not take due account of the Secretary's application of the provisions of 38

U.S.C. § 5107(b). Instead, the Veterans Court interpreted § 7261(b)(1) to only require

its review under § 7261(a) to have taken due account of the Board's application of the

provisions of 38 U.S.C. § 5107(b). As a final matter, Mr. Thornton also argues that the required standard of review by the Veterans Court regarding Secretary's application of the provisions of 38 U.S.C. § 5107(b) under § 7261(b)(1) must be a non-deferential *de novo* review.

**Arguments**

**I.**

**Standard of Review.**

This Court may decide all relevant questions of law in an appeal from a decision by the Veterans Court. 38 U.S.C. §7292(d)(1). This Court reviews legal determinations of the Veterans Court *de novo*. *Prenzler v. Derwinski*, 928 F.2d 392, 393 (Fed. Cir. 1991). In doing so, this Court may "affirm or if the decision of the Court of Appeals for Veterans Claims is not in accordance with law, . . . modify or reverse the decision of the Court of Appeals for Veterans Claims or . . . remand the matter as appropriate." 38 U.S.C. §7292(e)(1).

**II.**

**The Veterans Court misinterpreted 38 U.S.C. § 7261(b)(1)
by failing to enforce its mandate that it explicitly take due account
of the Secretary's application of 38 U.S.C. § 5107(b).**

The following passage from the decision on appeal shows how the Veterans Court misinterpreted the mandatory provisions of 38 U.S.C. § 7261(b)(1):

> In accordance with section 7261(b)(1), the Court takes due account of the Board's application of section 5107(b)—and finds no error. The Board was required by section 5107(b) to determine whether a reasonable doubt existed, and it complied, finding no doubt to resolve. R. at 18. The outcome of that analysis is a factual finding, *see Mariano*, 17 Vet.App. at 313; *Roberson*, 17 Vet.App. at 146, and Mr. Thornton does not challenge the Board's factual findings, Reply Br. at 3. Thus, he has not shown error in the Board's application of section 5107(b). *See Hilkert*, 12 Vet.App. at 151.

Appx7-8. The discussion that follows explains in greater detail how this passage illustrates the Veterans Court's misinterpretation of the statute.

## A.     The Statutory Framework.

Congress gave the Veterans Court "exclusive jurisdiction to review decisions of the Board of Veterans' Appeals." 38 U.S.C. § 7252(a). Additionally, Congress provided:

> Review in the Court shall be on the record of proceedings before the Secretary and the Board. The extent of the review shall be limited to the scope provided in section 7261 of this title.

38 U.S.C. § 7252(b). Thus, in the first sentence of § 7252(b), Congress explicitly provides the review made by the Veterans Court is required to be based on the record of proceedings before **both** the Secretary and the Board. In the second sentence of § 7252(b), Congress clearly states that the review by the Veterans Court is limited to the scope provided by Congress in the provisions of 38 U.S.C. § 7261.

A close examination of both subsections (a) and (b) of 38 U.S.C. § 7261 is required for the proper disposition of this appeal. The scope of review specified by Congress in § 7261(a) pertains to the obligation of the Veterans Court to decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary when presented. *See* 38 U.S.C. § 7261(a)(1). Congress also provided in subsection (a) that the Veterans Court is to hold unlawful and set aside decisions and findings of the Board found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or without observance of procedure required by law. *See* 38 U.S.C. § 7261(a)(3). In these two provisions, Congress identified the scope of review of the Veterans Court in the same way as Congress had previously done for judicial review of federal agencies under the Administrative Procedures Act ("APA").

Initially, as it did in the APA, Congress required that: "In making the determinations under subsection (a) of this section, the Court shall take due account of the rule of prejudicial error." *See* 38 U.S.C. § 7261(b) (2001). However, in 2002, Congress amended § 7261(b) to expand this requirement:

> In making the determinations under subsection (a), the Court
> shall review the record of proceedings before the Secretary
> and the Board of Veterans' Appeals pursuant to section

7252(b) of this title and shall—

> (1)    take due account of the Secretary's application
> of section 5107(b) of this title; and

> (2)    take due account of the rule of prejudicial error.

38 U.S.C. § 7261(b) (2002).

After Congress's 2002 amendment to § 7261(b), in *Conway v. Principi*, 353 F.3d 1369 (Fed Cir 2004), this Court was called upon to interpret the amended statute. In *Conway* this Court reviewed whether the Veterans Court had to apply the harmless error doctrine when determining whether the Board had complied with the notice provisions of the VCAA. Upon doing so the Court held that this issue presented a question of law. This Court hen held that there was no implicit exemption for the VCAA's notice requirements from the general statutory command contained in § 7261(b)(2) that the Veterans Court shall "take due account of the rule of prejudicial error." *See Conway*, 353 F.3d at 1373. Mr. Thornton's appeal similarly requires an interpretation of § 7261(b)(1), namely what is the scope of the Veterans Court's review required under the unambiguous language used by Congress? This Court in *Conway* determined that the text of § 7261(b)(2) was plain on its face and that it applied to **all** Veteran's Court proceedings. *Id.* at 1374. Now, Mr. Thornton's appeal asks this Court to determine that the text of § 7261(b)(1) also is plain on its face and that it applies to all determinations made by the Veterans Court under § 7261(a).

-9-

However, because the requirements now found in the amended version of §
7261(b)(1) did not previously exist in the requirements for review under the APA, Mr.
Thornton's appeal requires more from this Court.  First, he asks this Court to determine
whether, based on the language used by Congress, the Veterans Court misinterpreted §
7261(b)(1) when it limited its consideration of the issue to taking due account of the
Board's application of § 5107(b), rather than more broadly taking due account of the
**<u>Secretary's</u>** application of § 5107(b).  Second, he asks this Court to determine the
standard of review which must be used by the Veterans Court when it takes due account
of the application of § 5107(b), regardless of whether the Veterans Court's review is of
the Secretary's or the Board's application of this statute.

It is undebatable that when Congress amended § 7261(b) in 2002 by adding
subsection (b)(1) it used the phrase "the Secretary's application", and not the phrase "the
Board's application."  Therefore, this specific language must be given effect.  "Language
[in a statute] . . . cannot be interpreted apart from context.  The meaning of a word that
appears ambiguous if viewed in isolation may become clear when the word is analyzed
in light of the terms that surround it."  *Smith v. Brown*, 35 F.3d 1516, 1522-1523 (1994)
(citing *Smith v. United States*, 113 S.Ct. 2050, 2054 (1993).  The goal of an interpretive
endeavor is to identify and implement Congress's purpose in enacting a given statute.
*See Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) ("[W]e assume 'that the legislative
purpose is expressed by the ordinary meaning of the words used.'") (quoting *Richards v.*

*United States*, 369 U.S. 1, 9 (1962)).

In this matter, the context of the term "the Secretary's application" refers to the Secretary's application of the provisions of § 5107(b).  Congress's purpose in enacting § 5107(b) was to codify the Secretary's longstanding regulation, which prior to judicial review, provided:

> It is the defined and consistently applied policy of the Department of Veterans Affairs to administer the law under a broad interpretation, consistent, however, with the facts shown in every case.  When, after careful consideration of all procurable and assembled data, **a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant**.  By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim.  It is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility.  It is not a means of reconciling actual conflict or a contradiction in the evidence.  Mere suspicion or doubt as to the truth of any statements submitted, as distinguished from impeachment or contradiction by evidence or known facts, is not justifiable basis for denying the application of the reasonable doubt doctrine if the entire, complete record otherwise warrants invoking this doctrine.  The reasonable doubt doctrine is also applicable even in the absence of official records, particularly if the basic incident allegedly arose under combat, or similarly strenuous conditions, and is consistent with the probable results of such known hardships.

*See* 38 C.F.R. § 3.102 (emphasis added); *see also* 50 Fed.Reg. 34458 (Aug. 26, 1985), as amended at 66 Fed.Reg. 45630 (Aug. 29, 2001).  When Congress codified this regulation,

in pertinent part, it specified the following:

> When there is an approximate balance of positive and negative evidence **regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant**.

38 U.S.C. § 5107(b).

Thus, upon harmonizing the foregoing provisions of law, it is clear that the purpose Congress intended when it enacted both § 5107(b) and § 7261(b)(1) was to ensure that every claimant, on every issue, and in every claim, shall be given the benefit of the doubt. This precise purpose intended by Congress upon enacting this statute is manifest by the unambiguous language it used:

> In making the determinations under subsection (a), the Court shall review the record of proceedings before the Secretary and the Board of Veterans' Appeals pursuant to section 7252(b) of this title and **shall—[] take due account of the Secretary's application of section 5107(b) of this title;** . . .

*See* 38 U.S.C. § 7261(b)(1) (emphasis added). Courts are to presume that Congress carefully chose the words it put in a statute. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. . . . When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'") (internal citations omitted). In Mr. Thornton's case, this Court must presume that Congress meant broadly "the Secretary's application" of §

5107(b), and not the more limited nature of what otherwise would be "the Board's application" of this statute.

The only possible ambiguity which might exist in the language used by Congress in § 7261(b)(1) is the reference to the "the Secretary's application." Was Congress referring to the Secretary to the exclusion of "the Board's application?" Or was Congress referring to the Secretary as inclusive of the Board. In the provisions of 38 U.S.C. § 7104(a), Congress in defining the jurisdiction of the Board, used the phrase "one review on appeal to the Secretary." This Court in *DAV v. Principi,* 327 F.3d 1339 (Fed Cir 2003) understood Congress's use the phrase "one review on appeal to the Secretary" to have been referring to one review on appeal to the Board, even though Congress said "one review on appeal to the Secretary" because it is the Secretary whether acting as the adjudicator of claims in the first instance or acting as the Board in "one review on appeal to the Secretary" is responsible for correctly apply the law in the adjudication of claims for VA benefits. Thus, when Congress refers in § 7261(b)(1) to the application of the provisions of § 5107(b) this Court could reasonably assume that Congress was referring to the Secretary acting in his capacity as the Board. In either event, there is no ambiguity that a review is required.

This interpretation advanced by Mr. Thornton is further supported by the language used by Congress in another statute found in Chapter 72. This statute, § 7252(b), states the following:

-13-

> Review in the Court shall be on the record of proceedings before the Secretary and the Board. The extent of the review shall be limited to the scope provided in section 7261 of this title.

38 U.S.C. § 7252(b). In this language Congress makes clear that review by the Veterans Court was not intended to be limited to review of only Board decisions. Congress explicitly authorized the Veterans Court to review "the record of proceedings **before the Secretary** and the Board." *See id.* (emphasis added).

The interpretation of § 7261(b)(1) made by the Veterans Court in this case cannot be correct. This is so because this interpretation reads out of the statute the Veterans Court's authority, otherwise mandated by Congress in both § 7252(b) and § 7261(b)(1), to review "the record of proceedings before the Secretary." Essentially, the Veterans Court erred because it ignored the second sentence of § 7252(b), which unambiguously states that review by the Veterans Court "shall be limited to the scope provided in section 7261 of this title." When the provisions of § 7252(b) are considered, as is required by the plain language of § 7261(b)(1), the language used by Congress is clear. Congress mandated that in addition to reviewing factual determinations of the Board under § 7261(a), that the Veterans Court also is required to review "the record of proceedings before the Secretary" following its review under § 7261(a). This latter review is for the purpose of taking due account, of not only the Board's application, but also the Secretary's application of § 5107(b) as required by § 7261(b)(1).

-14-

**B.    Section 7261(b)(1) is plain on its face and must be applied by the Veterans Court in every appeal.**

How the Veterans Court misinterpreted § 7261(b)(1) is shown by the following

passage from the decision on appeal:

> Although the Court must "take due account of the Secretary's application of" that provision, 38 U.S.C. § 7261(b)(1), the Board's determination under section 5107(b) of whether the evidence is approximately balanced is a factual one that the Court reviews for clear error. *Mariano v. Principi*, 17 Vet.App. 305, 313 (2003); *Roberson v. Principi*, 17 Vet.App. 135, 146 (2003).

Appx7.  If this interpretation of § 7261(b)(1) was correct, such an interpretation renders

its enactment by Congress not only meaningless but redundant.  Thus, this interpretation

cannot be correct because one  section of a statute should not be interpreted so as to

render another section meaningless.  *Princess Cruises, Inc. v. United States*, 201 F.3d 1352,

1362 (Fed. Cir. 2000).  In effect, in *Deloach v. Shinseki*, 704 F.3d 1370 (Fed. Cir. 2013), this

Court employed this canon of statutory construction when it recognized:

> The dual requirement placed on the Court of Appeals for Veterans Claims by § 7261(a)(4) and (b)—to hold unlawful and set aside or reverse clearly erroneous findings of fact and take due account of the Secretary's application of the benefit of the doubt standard—indicates congressional intent to invest the court with the authority to reverse certain Board decisions.  Congress' enactment of the Veterans Benefits Act of 2002, which altered the scope of the court's judicial review, expressly empowered it to reverse adverse findings of material fact that are "clearly erroneous" rather than remand to the Board for re-determination.  Veterans Benefits Act of 2002, Pub. L. No. 107–330, § 401(c), 116 Stat. 2820, 2832

(codified as amended at 38 U.S.C. § 7261(a)(4)).

*See Deloach*, 704 F.3d at 1379. The two requirements discussed by this Court in *Deloach* are separate and distinct. Under § 7261(a)(4), which predated Congress's enactment of § 7261(b)(1), Congress authorized the Veterans Court to hold unlawful and set aside or reverse clearly erroneous findings of fact. Thus, it is obvious then that Congress did not consider its subsequent enactment of § 7261(b)(1)—which required the Veterans Court to take due account of the Secretary's application of § 5107(b)—to involve a factual determination made by the Board. Rather, whether the Secretary complied with the benefit of the doubt statute was a legal determination subject to a nondeferential standard of review.

In addition, the Veterans Court erred further when it interpreted § 5107(b) as requiring the Board to make a factual determination. To the contrary, the mandate of § 7261(b)(1) that the Court must "take due account of the Secretary's application of" the benefit of the doubt rule, i.e., "whether the evidence is approximately balanced", Appx7, does not involve the Board's factual determinations. Such an interpretation reads into the language used by Congress in § 7261(b)(1) words that were not used by Congress and do not exist. Congress did not say that the Veterans Court was to take due account of the Board's determination of "whether the evidence is approximately balanced was a factual one." Appx7. What Congress wrote was:

-16-

> In making the determinations under subsection (a), the Court shall review the record of proceedings before the Secretary and the Board of Veterans' Appeals pursuant to section 7252(b) of this title **and shall—take due account of the Secretary's application of section 5107(b) of this title**.

*See* 38 U.S.C. § 7261(b)(1) (emphasis added). This language is unambiguous. It directs that the Veterans Court **shall**, in addition to making determinations under § 7261(a), take due account of the Secretary's application of § 5107(b). This is the same additional obligation, as existed in the pre-amended version of § 7261, where the Veterans Court, in addition to making determination under § 7261(a), **also** was required to take due account of the rule of prejudicial error. Thus, the intent of Congress had been previously made clear that this mandate was an additional obligation.

Significantly, this interpretation of § 7261(b)(1) advanced by Mr. Thornton also is consistent with proclaimant veterans' benefits system designed by Congress. *See, e.g., Henderson v. Shinseki*, 131 S. Ct. 1197, 1205 (2011) ("The solicitude of Congress for veterans is of long standing.") (quoting *United States v. Oregon*, 366 U.S. 643, 647 (1961)). The statutes governing veterans' benefits are "strongly and uniquely pro-claimant." *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998). Congress designed the veterans' benefits adjudication process to be "a nonadversarial, *ex parte*, paternalistic system." *Collaro v. West*, 136 F.3d 1304, 1309-10 (Fed. Cir. 1998); *see also Hayre v. West*, 188 F.3d 1327, 1334 (Fed. Cir. 1999) (observing that Congress has established a "uniquely claimant friendly system of awarding compensation"), *overruled in part on other grounds* by

-17-

*Cook v. Principi*, 318 F.3d 1334 (Fed. Cir. 2002).

Thus, the veterans' benefits regime is the "antithesis of an adversarial, formalistic dispute resolving apparatus." *Forshey v. Principi*, 284 F.3d 1335, 1360 (Fed. Cir. 2002) (*en banc*), *superseded on other grounds by statute*, Veterans Benefits Act of 2002, Pub. L. No. 107-330, Section 402, 116 Stat. 2820, 2832. Indeed, the rules and procedures of the veterans' benefits system differ sharply from the procedures of normal civil litigation. The Supreme Court explained this special status in *Henderson*, *supra,* as follows:

> The contrast between ordinary civil litigation . . . and the system Congress created for veterans is dramatic. In ordinary civil litigation suits must generally be commenced within a specified limitations period; the litigation is adversarial; plaintiffs must gather the evidence supporting their claims and generally bear the burden of production and persuasion; both parties may appeal an adverse decision; and a final judgment may be reopened only in narrow circumstances. By contrast, a veteran need not file an initial benefits claim within any fixed period; the VA proceedings are informal and nonadversarial; and the VA assists veterans in developing their supporting evidence and must give them the benefit of any doubt in evaluating that evidence. A veteran who loses before the Board may obtain review in the Veterans Court, but a Board decision in the veteran's favor is final. And a veteran may reopen a claim simply by presenting new and material evidence.

*See Henderson*, 131 S. Ct. at 1199. The clear goal of Congress, as the Supreme Court noted, has been to "place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions." *See id.* Congress's special solicitude for veterans is readily understandable, and for reasons in addition to gratitude.

-18-

Therefore, this Court should accept Mr. Thornton's interpretation of § 7261(b)(1) because it consistent with the proclaimant, nonadversarial view of how the veterans benefits system was intended by Congress to function.

## C.    Under the correct interpretation of § 7261(b)(1), the Veterans Court must take due account of the Secretary's application of § 5107(b).

In light of the discussion above, when Congress amended § 7261(b) in 2002, it was acting in accordance with its overarching intent to ensure the placement of a thumb on the scale in the veteran's favor in the course of both administrative and judicial review of VA decisions.  Congress did so by expressly requiring the Veterans Court to take due account of the Secretary's application of the benefit of the doubt rule in every case. Heretofore, this intention by Congress has been disregarded by the Veterans Court, even when explicitly asked to do so, as in this appeal.  Nonetheless, when considered in the context of the intent of Congress to place "a thumb on the scale in the veteran's favor", it makes perfect sense that Congress would direct the Veterans Court to review the Secretary's application of § 5107(b).  With this amendment Congress required of the Veterans Court to make a final review of the claimant's appeal, the effect of which is to ensure that the record of proceedings before the Secretary established that every claimant, on every issue material to the determination of a matter, had been afforded the benefit of the doubt.  To ensure this outcome was attained it explicitly required that the Veterans Court conclude its review with a nondeferential *de novo* review of the Secretary's

application of § 5107(b).

This is evident from the fact that Congress, in the context of APA reviews of all other federal agency actions, required a final review of an appeal by the Veterans Court to take due account of the rule of prejudicial error that it also would require a final review by the Veterans Court to take due account of the Secretary's application of § 5107(b). Such a requirement would be further in accord with the proclaimant statutory scheme Congress created. In so doing, judicial review of this interpretation of the statute advanced by Mr. Thornton by this Article I Court is entirely consistent with the overarching intent of Congress that every veterans benefit claimant, on every issue material to the matter, receive the benefit of the doubt. As a result, judicial review places a thumb on the scale in the claimant's favor by ensuring that the Secretary has applied the benefit of the doubt as intended by Congress. Otherwise, Congress's amendment to § 7261 is rendered utterly meaningless.

This interpretation of § 7261 advanced by Mr. Thornton is further supported by the Secretary's regulatory statement of policy which predated the codification of the benefit of the doubt rule. In this policy statement, in pertinent part, the Secretary unambiguously provides that:

> Proceedings before VA are *ex parte* in nature, and **it is the obligation of VA to assist a claimant in developing the facts pertinent to the claim and to render a decision which grants every benefit that can be supported in law while protecting the interests of the Government. The**

-20-

> **provisions of this section apply to all claims for benefits and relief, and decisions thereon,** within the purview of this part 3.

*See* 38 C.F.R. § 3.103(a) (emphasis added).  The Veterans Court has recognized this as VA's "duty to maximize."  In *Bradley v. Peake*, the Veterans Court held, "The Secretary is required to maximize benefits[.]"  *See* 22 Vet.App. 280, 294 (2008).  Veterans are "generally [ ] presumed to be seeking the maximum benefit allowed by law and regulation[.]"  *AB v. Brown*, 6 Vet.App. 35, 38 (1993); *see also Tatum v. Shinseki*, 23 Vet.App. 152, 157 (2009).  This duty is rooted in 38 C.F.R. § 3.103(a), the Secretary's statement of VA policy, which provides that "it is the obligation of VA to assist a claimant in developing the facts pertinent to the claim render a decision which grants every benefit that can be supported in law while protecting the interests of the Government."  *See also Stowers v. Shinseki*, 26 Vet.App. 550, 555 (2014) and *Morgan v. Wilkie*, 31 Vet.App. 162, 168 (2019).

In the context of Mr. Thornton's case, which concerns the rating for his service connected PTSD, the Secretary's regulations providing for the rating of service-connected disabilities are instructive.  For example, the Secretary provides that:

> It is the defined and consistently applied policy of the Department of Veterans Affairs to administer the law under a broad interpretation, consistent, however, with the facts shown in every case.  When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant.  *See* § 3.102 of this chapter.

38 C.F.R. § 4.3.  Once again the Secretary has articulated in regulation that it is the defined and consistently applied policy of VA to administer the law under a broad interpretation, consistent, however, with the facts shown in every case.  This policy is consistent with Congress's mandate in § 7261(b)(1) to require the Veterans Court, following its § 7261(a) review of an appeal, to take due account of the Secretary's application of § 5107(b).  To reiterate, this review is required to ensure that the benefit of the doubt has been resolved by the Secretary based on the record of proceedings before the Secretary in favor of the claimant.

Further demonstrative of the support found in the Secretary's regulations concerning the duty to maximize benefits when rating of service-connected disabilities is the following:

> Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating.  Otherwise, the lower rating will be assigned.

38 C.F.R. § 4.7.  In this regulation, the Secretary requires that "if the disability picture more nearly approximates the criteria required for that rating," then the higher of the two evaluations will be assigned by VA.  Significantly, the Secretary's "more nearly approximates" language is in concert with Congress's language in § 5107(b) of "an approximate balance of positive and negative evidence."  This Court in *Kelly v. Nicholson*, 463 F.3d 1349, 1354 (Fed. Cir.2006), stated that 38 U.S.C. § 5107(b) "applies not only

-22-

to decisions relating to the overall merits of a claim, but by its plain language it applies

to all decisions determining any material issue relating to a claim." Thus in Mr.

Thornton's case, when determining whether the next higher rating of 70 percent should

apply, the benefit of the doubt must be applied by the Secretary. It makes sense then

that Congress would require in § 7261(b)(1) that the Veterans Court, following it §

7261(a) review, to take due account of the Secretary's application of § 5107(b) to ensure

that the benefit of the doubt had been resolved by the Secretary based on the record of

proceedings before the Secretary in favor of Mr. Thornton.

Finally, it also is fair to say that both this Court and the Veterans Court have

struggled with how the benefit of the doubt rule is to be applied. The most recent

example is this Court's split decision in *Lynch v. McDonough*, 999 F.3d 1391 (2021), in

which the majority was compelled to follow the existing precedent in *Ortiz v. Principi*, 274

F.3d 1361, 1364 (Fed. Cir. 2001). The tension resulting from this split decision was

apparent from the Court's conclusion:

> So, let us be clear. Under § 5107(b) and *Ortiz*, a claimant is
> to receive the benefit of the doubt when there is an
> "approximate balance" of positive and negative evidence,
> which *Ortiz* interpreted as "nearly equal" evidence. This
> interpretation necessarily includes scenarios where the
> evidence is not in equipoise but nevertheless is in
> approximate balance. Put differently, if the positive and
> negative evidence is in approximate balance (which includes
> but is not limited to equipoise), the claimant receives the
> benefit of the doubt.

-23-

*Lynch*, 999 F.3d 1395.  Mr. Thornton's appeal asks a very different question.

Mr. Thornton's appeal does not seek or require an interpretation of § 5107(b). Rather, his appeal requires an interpretation of § 7261(b)(1).  The necessary interpretation pertains to the obligation imposed by Congress on the Veterans Court to take due account of the Secretary's application of § 5107(b).  This Court as well as the Supreme Court have consistently held that a reviewing court is required to look to the plain meaning of statutes and, when the plain meaning is determined, it is this Court's job simply to apply it.  *Frederick v. Shinseki*, 684 F.3d 1263, 1269 (Fed. Cir. 2012) (statutes); *see also Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019); *Artis v. District of Columbia*, 138 S. Ct. 594, 603 (2018) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)); *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

The meaning of the language used by Congress in § 7261(b)(1) is clear and unambiguous.  Thus, it is this Court's job to instruct the Veterans Court to apply this statute as written.  It will then be up the Veterans Court to decide how it takes due account of the Secretary's application of § 5107(b).  In Mr. Thornton's judgment it is not debatable that the Veterans Court is required to take due account of the Secretary's application of § 5107(b) and, therefore, this Court must order the Veterans Court to do so.

**D.    The Veterans Court must make a nondeferential *de novo* review of the Secretary's application of § 5107(b).**

The remaining matter to be addressed by this appeal is the standard of review to be utilized by the Veterans Court in taking due account of the Secretary's application of § 5107(b).  The answer is a matter of first impression.  The requirement imposed by Congress in § 7261(b)(1) is unique to judicial review generally as well as specifically to review by the Veterans Court.  Mr. Thornton is unaware of any other context in which a reviewing court is instructed by Congress to take due account of the Secretary's application of § 5107(b).  This is because there is no other administrative proceeding in which Congress mandates that "regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant."  38 U.S.C. § 5107(b).

From its beginning the Veterans Court has recognized that § 5107(b) constitutes a "unique" standard of proof which is lower than any other in contemporary American jurisprudence.  The Veterans Court acknowledged that it was created by Congress to reflect "the high esteem in which our nation holds those who have served in the Armed Services."  *See Gilbert v. Derwinski*, 1 Vet.App. 49, 54 (1990).  Further, the Supreme Court in *Henderson v. Shinseki*, 563 U.S. 428, 440 (2011), noted that "[t]he contrast between ordinary civil litigation . . . and the system that Congress created for the adjudication of veterans' benefits claims could hardly be more dramatic."  In light of this unique, but

-25-

well established public and judicial policy, the appropriate standard of review by the Veterans Court of the Secretary's application of § 5107(b) is *de novo* review. This standard of review also is appropriate given the uniqueness itself of the standard of proof created by Congress, which is only applicable to decisions made by the Secretary regarding VA benefits.

This Court in *Hensley v. West*, 212 F.3d 1255 ( Fed. Cir 2000), explained *de novo* review as follows:

> The phrase "*de novo* review," although occasionally used by both this court and the Court of Appeals for Veterans Claims, may in certain contexts be misunderstood. Appellate courts can "review" only that which has happened in the past, while the term "*de novo*" may be understood to mean anew, without reference to what has gone before. To the extent that "*de novo*" connotes judicial review anew and without reference to what has gone before, the term fails to accurately describe the appellate process, and particularly is this so when it is applied to review of issues upon which any measure of deference is accorded to the decision under review.

*Hensley*, 212 F.3d at 1263. In the context of review by the Veterans Court of taking due account of the Secretary's application of § 5107(b), the Veterans Court would most definitely be reviewing "that which has happened in the past."

Furthermore, there would be no measure of deference to be accorded to the Secretary since the Veterans Court would be reviewing the Secretary's statutory duty to have afforded the benefit of the doubt to all claimants on any issue material to the

determination of a matter. Consequently, such a review would go to the essence of the statutory scheme created by Congress to place a thumb on the scale in favor of the claimant in the adjudication of a claim. The undertaking of a non-deferential review by the Veterans Court would be consistent with the design of Congress to provide veterans and other qualified claimants with a system of benefits adjudication which is nonadversarial, *ex parte*, and truly and meaningfully paternalistic. *Collaro v. West*, 136 F.3d 1304, 1309-10 (Fed. Cir. 1998). As this Court observed in *Hodge v. West*, 155 F.3d 1356 (Fed. Cir. 1998),

> . . . in the context of veterans' benefits where the system of awarding compensation is so uniquely pro-claimant, **the importance of systemic fairness and the appearance of fairness carries great weight**.

*Hodge*, 155 F.3d 1363. In order to ensure systemic fairness Congress in 2002 amended § 7261(b) to ensure that the Veterans Court's review of a decision by the Secretary included review of how the Secretary applied the provisions of § 5107(b).

Such review as mandated by Congress in § 7261(b)(1) would permit the judges of the Veterans Court a final opportunity to correct a denial of benefits which resulted from a failure by the Secretary to afford a claimant the benefit of the doubt on any issue material to the determination of a matter. In so doing, the Veterans Court would preserve the systemic fairness as well as the appearance of fairness of the adjudication of claims intended by Congress. Congress has consistently demonstrated it commitment

to systemic fairness as well to wanting the appearance of fairness in the adjudication of VA claims. Far too often, however, the Secretary makes decisions without affording every claimant the benefit of the doubt on every issue material to the determination of a matter. To remedy such outcomes, Congress's enactment of § 7261(b)(1) is an unambiguous effort to ensure a final look at the Secretary's application or nonapplication of § 7261(b)(1).

## Conclusion

This Court must determine that the provisions of 38 U.S.C. § 7261(b)(1) are plain on their face and require that all determinations made by the Veterans Court are compliant with the provisions of 38 U.S.C. § 7261(a). In addition, this Court must determine that it is the obligation of the Veterans Court to take due account of the Secretary's application of § 5107(b), and not the Board's application. Finally, this Court must determine that the standard of review to be utilized by the Veterans Court in taking due account of the Secretary's application of § 5107(b) is *de novo*.

For the foregoing reasons, the Court should reverse the decision of the Veterans Court not to take due account of the Secretary's application of § 5107(b) and instruct the Veterans Court on remand to take due account of the Secretary's application of § 5107(b) and do so using a *de novo* standard of review.

Respectfully Submitted,


/s/ Kenneth M. Carpenter
Kenneth M. Carpenter
**CARPENTER, CHARTERED**
1525 SW Topeka Blvd, P.O. Box 2099
Topeka, Kansas 66601-2099
(785) 357-5251
carpgh@mindspring.com
Attorney for Claimant-Appellant

**ADDENDUM - CAVC MEMORANDUM DECISION**

*Designated for electronic publication only*

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 20- 0882

NORMAN F. THORNTON, APPELLANT,

v.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before FALVEY, *Judge.*

**MEMORANDUM DECISION**

*Note: Pursuant to U.S. Vet. App. R. 30(a),*
*this action may not be cited as precedent.*

FALVEY, *Judge*: Army veteran Norman F. Thornton through counsel appeals a January 23, 2019, Board of Veterans' Appeals decision denying a rating above 50% for post-traumatic stress disorder (PTSD) and denying a rating above 40% for a disability manifested by fatigue, joint pain, gastrointestinal bleeding, headaches, shortness of breath, nausea, body shakes, and diarrhea as due to an undiagnosed illness.[1] The appeal is timely, the Court has jurisdiction to review the Board decision, and single-judge disposition is appropriate. *See* 38 U.S.C. §§ 7252(a), 7266(a); *Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990).

As for the PTSD claims, we are asked to decide whether the Board incorrectly applied the rating schedule, the benefit of the doubt doctrine, the rule on the assignment of the higher of two ratings, and the duty to maximize benefits, and whether the Board gave an adequate statement of reasons or bases. As for the undiagnosed illness claim, we are asked to decide whether the Board incorrectly selected an analogous rating or incorrectly applied 38 C.F.R. § 4.88b, Diagnostic Code (DC) 6354, and whether the Board gave an adequate statement of reasons or bases. For the reasons below, we will affirm the Board's decision.

---

[1] The Board granted entitlement to a total disability rating based on individual unemployability (TDIU). Record (R.) at 5. This is a favorable finding that this Court cannot disturb. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007).

## I. BACKGROUND

Mr. Thornton served on active duty from October 1988 to December 1991. R. at 1357. In November 1994, VA granted service connection for a "disability manifested by fatigue, joint pain, gastrointestinal bleeding, headaches, night sweats, nightmares, shortness of breath, nausea, numbness in both hands, body shakes, and diarrhea due to an undiagnosed illness (Environmental Hazard in Gulf War/Undiagnosed Illness) [hereinafter 'the undiagnosed illness']," with a 40% rating. *See* R. at 1932. In February 2005, the regional office (RO) granted service connection for PTSD with a 10% rating. R. at 1928. In February 2015, Mr. Thornton applied for increased ratings for PTSD and the undiagnosed illness (listed as Gulf War Syndrome) and for service connection for a disconnect (dissociative) disorder. R. at 1679.

In a July 2015 VA examination to evaluate the undiagnosed illness, the VA examiner noted that the illness was undiagnosed but completed an examination form for chronic fatigue syndrome (CFS). R. at 1300-03. Mr. Thornton reported that he "[wore] out real easy," and could work for only six to seven hours on a typical day. *Id*. Mr. Thornton also reported that he could not distinguish his tiredness from his PTSD. R. at 1301. The examiner concluded that CFS restricted Mr. Thornton's routine daily activities to 50% to 75% of his pre-illness level, but that he had no incapacitation. R. at 1302. The examiner noted that Mr. Thornton had slept poorly since returning from the Gulf War, where he had chemical exposure, and that he also suffered joint aches, muscle spasms, limb numbness, carpal tunnel syndrome, PTSD, and depressive symptoms likely due to his PTSD, *id*., but had not suffered gastrointestinal bleeding in a "long time" and experienced less nausea, R. at 1303. The examiner concluded that, "[b]ased on his [neuropsychological] testing and veteran's own testimony, a fair amount of his symptoms are related to his PTSD and therefore, not undiagnosed symptoms." *Id*.

Also in July 2015, he underwent a VA examination to evaluate his PTSD. R. at 1304-13. The examiner found that Mr. Thornton suffered occupational and social impairment with reduced reliability and productivity. R. at 1305. The examiner noted that Mr. Thornton was married but separated, had a good relationship with his two children, and participated in medieval reenactment events with friends. R. at 1307. Mr. Thornton reported that he had done some "side jobs" in the prior five years, but that the biggest barrier to employment was "sudden intense fatigue that comes out of nowhere," and that memory lapses also hindered his work. R. at 1308. The examiner found

2

that Mr. Thornton exhibited symptoms of PTSD such as depressed mood, anxiety, sleep impairment, and "difficulty in adapting to stressful circumstances." R. at 1310-11.

In July 2015, the RO increased the PTSD rating to 50%, continued the 40% rating for the undiagnosed illness, and denied service connection for a disconnect (dissociative) disorder. R. at 1074.

In a December 2015 VA examination to evaluate the undiagnosed illness, the examiner noted that Mr. Thornton had gone through a series of maintenance and service jobs. R. at 951. The examiner described his symptoms as debilitating fatigue, headaches, migratory joint pains, sleep disturbances, episodic chills, and weight loss (which Mr. Thornton attributed to dietary changes). R. at 951-52. Mr. Thornton denied having gastrointestinal, bowel, or bladder symptoms. R. at 952. The examiner determined that the veteran's routine daily activities were restricted to 50% to 75% of his pre-illness level, but he had no periods of incapacitation. *Id.*

In a December 2015 VA PTSD examination, the examiner found that Mr. Thornton had occupational and social impairment with reduced reliability and productivity. R. at 944. The examiner noted that he was still separated from his wife but had a new girlfriend, had good relationships with his children, and continued to participate in medieval reenactment with friends. R. at 945. Mr. Thornton reported that he was supposed to work in summer 2015 but had a "memory lapse" and forgot to report to the job. R. at 946. The examiner noted that Mr. Thornton exhibited sleep disturbances, depressed mood, anxiety, mild memory loss, "difficulty in adapting to stressful circumstances," and nightmares, slept only three to four hours a night, and felt depressed "a lot," and anxious up to four or five days a week. R. at 947-48. But the examiner found that Mr. Thornton was alert and oriented, appropriately groomed, and had no psychotic symptoms. R. at 948. The examiner determined that Mr. Thornton had moderate impairment in reliability and productivity. R. at 949.

In December 2015, the RO continued the 50% rating for PTSD and the 40% rating for the undiagnosed illness. R. at 918. In December 2016, Mr. Thornton filed his Notice of Disagreement. R. at 875-82. That same month, the RO issued a Statement of the Case (SOC), continuing the 50% rating for PTSD and the 40% rating for the undiagnosed illness. R. at 767-801. In February 2017, Mr. Thornton perfected his appeal. R. at 765-66.

In an April 2017 VA examination evaluating the undiagnosed illness, the examiner noted that the veteran's fatigue was "frequently intertwined with his PTSD" and that it would be "mere

speculation" to estimate how the conditions affected each other. *Id*. The examiner found that Mr. Thornton's undiagnosed illness restricted his routine daily activities by less than 25% of his pre-illness level.[2] R. at 755. In September 2017, the RO issued a Supplemental SOC (SSOC), which continued the 50% rating for PTSD and the 40% rating for the undiagnosed illness. R. at 695-703.

In January 2019, the Board found that the evidence weighed against an increased rating for the undiagnosed illness claim and that Mr. Thornton's overall level of occupational and social impairment was most consistent with the 50% rating and so denied an increased rating for PTSD. R. at 12, 17-18. This appeal followed.

## II. ANALYSIS

To begin, we note that Mr. Thornton argues that the Secretary has not shown that the Board correctly applied the law. Reply Brief (Br.) at 4, 5. This implies that the Secretary bears the burden of showing no error. But Mr. Thornton, as the appellant, has the burden of showing error—that the Board incorrectly applied the law. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (holding that the appellant has the burden of showing error), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table). With that in mind, we now turn to Mr. Thornton's specific arguments.

### A. The PTSD Claim

#### *1. Rating Criteria*

Mr. Thornton argues that the Board erred when it continued the 50% rating for PTSD and that a correct application of the rating schedule entitles him to a 70% rating. Appellant's Br. at 4, 11. He argues that the Board did not assess the severity, frequency, or duration of his PTSD symptoms, and that it did not assess the occupational and social impairment caused by those symptoms. *Id*. at 6-7. He argues that the Board's failures mean that it did not determine his overall disability picture and so it could not have properly applied the rating criteria. *Id*. at 10-11. He does not challenge the Board's underlying findings of fact. Reply Br. at 3. The Secretary argues that, because Mr. Thornton does not challenge the adequacy of the VA examinations or argue that the Board overlooked any evidence, he has not shown that the Board's application of the rating criteria was prejudicial error. Secretary's Br. at 8-9.

---

[2] The examiner explained that this meant that "more than 75% of the pre-illness level of activities are not restricted." R. at 755.

PTSD is evaluated under 38 C.F.R. § 4.130, DC 9411. That provision provides that a 50% disability rating is warranted when PTSD causes

> [o]ccupational and social impairment with *reduced reliability and productivity* due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

38 C.F.R. § 4.130, DC 9411 (2020) (emphasis added). A 70% disability rating is warranted when PTSD causes

> [o]ccupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; *difficulty in adapting to stressful circumstances* (including work or a worklike setting); inability to establish and maintain effective relationships.

*Id*. (emphasis added).

When deciding a mental health rating, VA must engage in a "holistic" analysis that assesses symptoms according to their severity, frequency, and duration. *Bankhead v. Shulkin*, 29 Vet.App. 10, 22 (2017). In particular, "[t]he 70 percent disability rating regulation contemplates initial assessment of the symptoms displayed by the veteran, and if they are of the kind enumerated in the regulation, an assessment of whether those symptoms result in occupational and social impairment with deficiencies in most areas." *Vazquez-Claudio v. Shinseki*, 713 F.3d 112, 118 (Fed. Cir. 2013); *see also Emerson v. McDonald*, 28 Vet.App. 200, 212 (2016).

Here, we do not find that the Board failed to properly apply the rating criteria for PTSD under § 4.130. The Board considered Mr. Thornton's symptoms and the resulting level of impairment. *See Vazquez-Claudio*, 713 F.3d at 118. The Board determined that, based on a combination of the VA examiners' opinions and Mr. Thornton's lay statements, his memory issues most closely approximated impairment of short- and long-term memory loss, a characteristic of the 50% rating. R. at 16; *see* § 4.130. Because Mr. Thornton himself said that his chronic fatigue was the main obstacle to steady employment, the Board determined that his memory lapses due to

5

PTSD did not alone cause significant occupational impairment. R. at 17; *see* R. at 1308 (July 2015 examination). And given his good relationships with his children and participation in social or recreational activities, the Board found his social impairment due to PTSD to be minimal. R. at 17. The Board acknowledged that both VA examiners found that he had "difficulty in adapting to stressful circumstances," a characteristic of the 70% rating. *Id.*; *see* R. at 948, 1311. But the Board noted that those same examiners still found that his occupational impairment was best characterized as reduced reliability and productivity, which fits the 50% rating criteria. R. at 17; *see* R. at 949, 1305. The Board correctly noted that it must engage in a holistic analysis, considering not only the presence of symptoms but also the level of impairment. *Id.* (citing *Bankhead*, 29 Vet.App. at 20); *see Vazquez-Claudio*, 713 F.3d at 118. Throughout its analysis, the Board not only took note of his symptoms but, crucially, considered their impact on his occupational and social functioning, thus complying with the legal requirements for determining the degree of disability. R. at 15-17; *see Vazquez-Claudio*, 713 F.3d at 118. Thus, Mr. Thornton has not shown that the Board's application of § 4.130 was erroneous. *See Hilkert*, 12 Vet.App. at 151.

### 2. Benefit of the Doubt

Mr. Thornton argues that the Court must undertake two reviews. He argues that the Court must first review whether the Board's application of 38 C.F.R. § 4.3 was "arbitrary, capricious, an abuse of discretion, or not otherwise an in accordance with law," and whether it was supported by an adequate statement of reasons or bases. Appellant's Br. at 16-17 (citing 38 U.S.C. § 7261(a)(3)(A)). He argues that under this review the Board failed to correctly apply § 4.3 and assign a 70% rating for his PTSD. *Id.* at 16, 22. He argues that the Court must then conduct a review under 38 U.S.C. § 7261(b)(1), which requires the Court to take due account of the Board's application of 38 U.S.C. § 5107(b), the statutory basis for giving the claimant the benefit of the doubt. *Id.* at 17. He argues that a reasonable doubt arose over the degree of his PTSD disability and thus the Board erred when it did not resolve the doubt in his favor by assigning a 70% rating. *Id.* at 18-19. In response, the Secretary argues that Mr. Thornton is effectively asking the Court to use section 7261(b)(1) to reweigh the evidence, which the Court cannot do. Secretary's Br. at 11-12.

Both the statute and the regulation require that, if there is an approximate balance of evidence for and against the claimant's position, then the Secretary must decide the matter in the

claimant's favor, with § 4.3 referring specifically to doubt about the claimant's degree of disability.[3] But if the Board finds that the evidence is not approximately balanced, then there is no doubt to resolve, and if the Board thus does not apply § 4.3, that decision is not arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law. *Mayhue v. Shinseki*, 24 Vet.App. 273, 282 (2011). Although the Court must "take due account of the Secretary's application of" that provision, 38 U.S.C. § 7261(b)(1), the Board's determination under section 5107(b) of whether the evidence is approximately balanced is a factual one that the Court reviews for clear error. *Mariano v. Principi*, 17 Vet.App. 305, 313 (2003); *Roberson v. Principi*, 17 Vet.App. 135, 146 (2003).

Mr. Thornton fails to show that the Board erred in its application of either provision. *See Hilkert*, 12 Vet.App. at 151. He does not explain how the evidence is approximately balanced and thus caused a reasonable doubt over whether he warranted a 50% or a 70% rating. The Board did not forget to consider either section 5107(b) or § 4.3; it simply found that there was no doubt to resolve. R. at 18. In one instance, the Board found a reasonable doubt over whether Mr. Thornton's memory lapses were due to his PTSD and it resolved that doubt in his favor by finding that his memory lapses were attributable to that condition. R. at 15. But the Board found that overall the evidence showed a moderate degree of impairment better contemplated by the 50% rating than by the 70% rating, R. at 17; that the evidence was not approximately evenly balanced, R. at 16; and that there was no doubt to be resolved on that issue, R. at 18.

As the overall evidence was not in approximate balance, § 4.3 simply did not apply, and thus the Board's decision not to apply the provision was not arbitrary, capricious, an abuse of discretion, or not otherwise an in accordance with law. *See Mayhue*, 24 Vet.App. at 282. In accordance with section 7261(b)(1), the Court takes due account of the Board's application of section 5107(b)—and finds no error. The Board was required by section 5107(b) to determine

---

[3] Section 5107(b) requires that, "[w]hen there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant." Section 4.3 requires that, "[w]hen after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant." A "reasonable doubt" exists where there is "an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim" 38 C.F.R. § 3.102 (2020). "Balance" means a state of "equipoise" or "to be equal in value," and so an "approximate balance" is "when the evidence in favor of and opposing the veteran's claim is found to be almost exactly or nearly equal." *Ortiz v. Principi*, 274 F.3d 1361, 1364 (Fed. Cir. 2001); *see also Lynch v. McDonough*, ___ F.3d ___, ___, No. 20-2067, slip op. at 8 (Fed. Cir. June 3, 2021) ("[I]f the positive and negative evidence is in approximate balance (which includes but is not limited to equipoise), the claimant receives the benefit of the doubt.").

whether a reasonable doubt existed, and it complied, finding no doubt to resolve. R. at 18. The outcome of that analysis is a factual finding, *see Mariano*, 17 Vet.App. at 313; *Roberson*, 17 Vet.App. at 146, and Mr. Thornton does not challenge the Board's factual findings, Reply Br. at 3. Thus, he has not shown error in the Board's application of section 5107(b). *See Hilkert*, 12 Vet.App. at 151.

### 3. Choosing Between Two Ratings

Mr. Thornton also argues that the Board failed to correctly apply 38 C.F.R. § 4.7 and assign the higher 70% rating. Appellant's Br. at 14. He argues that the Board failed to define what it meant by his "disability picture," *id*. at 14-15, and that without identifying or describing his disability picture the Board could not have correctly applied § 4.7, *id*. at 16. Mr. Thornton argues that "disability picture" should be given its ordinary meaning, which he says is "what, for the individual veteran[,] his or her disability looks like to an outside observer." *Id*. at 15. The Secretary argues that the Board properly considered his disability picture, noting his symptoms and resulting impairment, and properly found that his disability picture warranted a 50% rating. Secretary's Br. at 10-11.

Mr. Thornton has not shown that the Board's failure to define "disability picture" is prejudicial error. Although the Board did not define "disability picture," it discussed his symptoms and their level of impairment; by his own standard, the Board gave an image of what his disability "look[ed] like to an outside observer." *See* R. at 16-17; Appellant's Br. at 15. Thus, we are unpersuaded that the Board's failure to define the phrase "disability picture," when it still discussed his condition in detail, rises to the level of prejudicial error. *See Waters v. Shinseki*, 601 F.3d 1274, 1278 (Fed. Cir. 2010) (holding that the appellant has the burden of showing prejudicial error).

And we do not find the Board's application of § 4.7 erroneous. The regulation does not mandate the choice of the higher rating in every instance, but only when the higher rating "more nearly approximates the criteria required for that rating." 38 C.F.R. § 4.7 (2020). Here, the Board found that Mr. Thornton's condition did not "more nearly approximate" the 70% rating. R. at 17. The Board noted that he exhibited one symptom—difficulty adapting to stressful circumstances— characteristic of a 70% rating, but his condition as a whole was more consistent with a 50% rating because his other symptoms resulted only in moderate impairment. R. at 17. When the claimant's condition more closely matches the lower rating, then the regulation precludes assigning a higher rating. 38 C.F.R. § 4.7; *see also Bankhead*, 29 Vet.App. at 19. The Board's choice among ratings

8

complied with § 4.7, and so Mr. Thornton has not shown the Board's decision on that point was erroneous. *See Hilkert*, 12 Vet.App. at 151.

### 4. Duty to Maximize Benefits

Mr. Thornton also argues that the Secretary's obligation to maximize benefits under 38 C.F.R. § 3.103(a) is manifested in the provisions of §§ 4.3 (resolving doubt in favor of the veteran) and 4.7 (assigning the higher of two evaluations). Appellant's Br. at 11. He appears to argue that the Board, by not resolving doubt in his favor and assigning a rating higher than 50% for PTSD, failed to maximize benefits. Although he is correct about the obligation to maximize benefits, that maximization is limited to what "can be supported in law while protecting the interests of the Government." 38 C.F.R. § 3.103(a) (2020). Because we find that the Board did not err when applying §§ 4.3 and 4.7, we thus do not find that the Secretary failed in his obligation under § 3.103(a).

### 5. Reasons or Bases

Mr. Thornton also argues that the Board gave an inadequate statement of reasons or bases for its determination that the preponderance of the evidence was against a 70% PTSD rating. Appellant's Br. at 16-17. In response, the Secretary argues that the Board gave an adequate statement of reasons or bases, particularly when it noted consistencies between the July and December 2015 VA examinations and when it noted that, although one of Mr. Thornton's symptoms aligned with a 70% rating, the evidence as a whole warranted a 50% rating. Secretary's Br. at 10-11.

As with any finding on a material issue of fact and law presented on the record, the Board must support its determination of the appropriate rating with an adequate statement of reasons or bases that enables the claimant to understand the precise basis for that determination and facilitates review in this Court. 38 U.S.C. § 7104(d)(1); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of evidence, account for evidence it finds persuasive or unpersuasive, and provide reasons for rejecting material evidence favorable to the claimant. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).

We find that the Board gave an adequate statement of reasons or bases. The Board summarized the findings of the July and December 2015 VA examinations. R. at 14-15. The Board acknowledged his difficulty doing work but found, based on his own reports, that his occupational

9

impairment was due to his chronic fatigue rather than his PTSD, and that PTSD's effects were "mild to moderate," not the level contemplated by the 70% rating. R. at 16-17. It also acknowledged that, although he displayed a symptom characteristic of the 70% rating, "difficulty adapting to stressful circumstances," it explained that it must engage in a holistic analysis and on balance his symptoms were more closely contemplated by a 50% rating. R. at 17. It noted that both the July and December 2015 examiners found that his occupational impairment was best characterized as reduced reliability and productivity, which is consistent with the criteria for a 50% rating. R. at 17. The Board accounted for the favorable evidence and gave the precise bases for its determinations, so we find that its statement of reasons or bases was adequate. *See Caluza*, 7 Vet.App. at 506; *Gilbert*, 1 Vet.App. at 56-57.

### B. Undiagnosed Illness

#### 1. Choice of Diagnostic Code

Mr. Thornton argues that the Board incorrectly applied 38 C.F.R. § 4.20 by analogizing his undiagnosed illness to CFS, rated under 38 C.F.R. § 4.88b, DC 6354. Appellant's Br. at 22-23. He argues that, because the undiagnosed illness includes symptoms like gastrointestinal bleeding, a more closely analogous rating would be post-gastrectomy syndrome[4] under 38 C.F.R. § 4.114, DC 7308. *Id*. at 23-24. He asks the Court to reverse the Board's decision to select DC 6354 and direct the Board to assign DC 7308. *Id*. at 24.[5] The Secretary argues that Mr. Thornton's current symptoms are indeed more analogous to CFS and so the Board correctly assigned DC 6354. Secretary's Br. at 13-14.

An unlisted condition may be rated under the DC for a different disease if the conditions are "closely analogous." 38 C.F.R. § 4.20 (2020); *see also Vogan v. Shinseki*, 24 Vet.App. 159, 161 (2010); *Lendenmann v. Principi*, 3 Vet.App. 345, 351 (1992). The Court may set aside the Board's choice of DC only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Stankevich v. Nicholson*, 19 Vet.App. 470, 472 (2006); *Butts v. Brown*, 5 Vet.App. 532, 538-39 (1993).

---

[4] Gastrectomy is the removal of all or part of the stomach. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 754 (33d ed. 2020).

[5] Although Mr. Thornton observes that DC 7308 provides for both 40% and 60% ratings, Appellant's Br. at 23-24, he does not specify which rating he wants the Board to choose.

10

CFS is rated as 40% disabling where "debilitating fatigue" and cognitive impairments (including forgetfulness) are "nearly constant and restrict daily activities from 50 to 75 percent of the pre-illness level." 38 C.F.R. § 4.88b, DC 6354 (2020). Post-gastrectomy syndrome is rated as 40% disabling where there are "less frequent episodes of epigastric disorders with characteristic mild circulatory symptoms after meals but with diarrhea and weight loss." 38 C.F.R. § 4.114, DC 7308 (2020). It is rated as 60% disabling where there is "nausea, sweating, circulatory disturbance after meals, diarrhea, hypoglycemic symptoms, and weight loss with malnutrition and anemia." *Id*.

Here, we do not find that the Board's choice of DC 6354 to rate by analogy the undiagnosed illness was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The Board considered the July and December 2015 and the April 2017 VA examinations, all of which assessed Mr. Thornton for CFS. R. at 9-11. The Board noted that he suffered nightmares and night-sweats but found that those were due to his PTSD and not the undiagnosed illness. *Id*. It also found that he had not suffered gastrointestinal bleeding for years and that there was limited evidence about diarrhea and nausea. *Id*. Indeed, in the July 2015 examination, Mr. Thornton himself reported that he had not suffered gastrointestinal bleeding in a "long time" and was experiencing less nausea. R. at 1302-03. In the December 2015 examination, he denied any gastrointestinal problems and, although reporting weight loss, he attributed it to dietary changes, not to the undiagnosed illness. R. at 952. The record shows that symptoms of CFS, like fatigue and forgetfulness, were consistently present, but that several symptoms of post-gastrectomy syndrome, like gastrointestinal problems and circulatory problems, were not. Thus, we cannot say that the Board's choice of DC 6354 (CFS) was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Stankevich*, 19 Vet.App. at 472; *Butts*, 5 Vet.App. at 538-39.

Although Mr. Thornton also invokes the Board's duty to provide an adequate statement of reason or bases for its choice of DC, he does not provide any argument that the Board's reasons or bases were inadequate in this regard. Appellant's Br. at 24. Thus, we find his argument on this point to be undeveloped, and so we will not consider it. *See Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006).

### 2. Application of DC 6354

Mr. Thornton argues in the alternative that, even if the choice of DC 6354 were correct, the Board's application of DC 6354 was clearly erroneous. Appellant's Br. at 25, 28. He argues

that the Board failed to define "pre-illness level" or "incapacitation" as used in the rating criteria, meaning that the Court cannot determine whether the Board correctly applied the rating criteria of DC 6354. *Id*. at 25, 26-27. The Secretary argues that the Court should simply abide by the ordinary meaning of "pre-illness" level and no further definition from the Board was necessary. Secretary's Br. at 15-16. He also argues that "incapacitation" is defined in the regulation. *Id*. at 16.

We may easily dispose of Mr. Thornton's arguments about the definition of "incapacitation." DC 6354 rates debilitating fatigue that either restricts routine daily activities or that results in periods of "incapacitation." § 4.88b. The regulation states that "incapacitation exists only when a licensed physician prescribes bed rest and treatment." *Id*. The Board twice noted this definition in its decision, R. at 5, 11, but found that Mr. Thornton never experienced any periods of incapacitation, R. at 11. (Both the July and December 2015 examiners found no incapacitation due to CFS. R. at 952, 1302.) Instead, he was rated based, not on incapacitation, but on the restriction of his routine daily activities. *Id*. (Similarly, both the July and December 2015 examiners found that his routine daily activities were restricted to 50% to 75% of his pre-illness level. R. at 952, 1302.) The term "incapacitation" was already defined in the regulation, the Board repeated that definition, and incapacitation was not an issue before the Board. Thus, Mr. Thornton has shown no error. *See Hilkert*, 12 Vet.App. at 151.

"Pre-illness level" is not defined in the regulation or in the Board decision, but, as the Secretary argues, unless otherwise directed, the ordinary meaning of a phrase controls. Secretary's Br. at 15 (citing *Prokarym v. McDonald*, 27 Vet.App. 307, 310 (2015) ("In the absence of an express definition, words are given their ordinary meaning.")). He argues that the "pre-illness level" means the level of routine daily activities that the claimant engaged in before the illness. Secretary's Br. at 15. "[I]f the meaning of the regulation is clear from its language, then that is the end of the matter." *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006). Further discussion is needed only when there is ambiguity, which arises "when the application of the ordinary meaning . . . of the regulation fails to answer the question at issue." *Roby v. Wilkie*, 31 Vet.App. 91, 98-99 (2019) (citing *Tropf,* 20 Vet.App. at 321 n.1). By the plain language of the phrase, "pre-illness level" simply means the state of a claimant's routine daily activities before the onset of CFS symptoms; there is no ambiguity to address. *See Tropf,* 20 Vet.App. at 320. Thus, we agree with the Secretary that the ordinary meaning governs.

Mr. Thornton cites *Johnson v. Wilkie*, 30 Vet.App. 245, 255 (2018), arguing that the Board must disclose the standard under which it is operating. Appellant's Br. at 26. But *Johnson* focused on a situation where the Board failed to define a term of degree (specifically, "very frequent") that could be applied inconsistently across similar cases without a clear definition. 30 Vet.App. at 255. "Pre-illness" is a term whose meaning is apparent: before the illness. *See Prokarym*, 27 Vet.App. 310. Although the "level" of claimants' pre-illness routine daily activities  may vary, the degree of impairment looks at the effect of CFS symptoms on the individual claimant's employment and daily life as compared to that claimant's employment and daily life before the illness. *See Vazquez-Flores v. Shinseki*, 24 Vet.App. 94, 106 (2010) (noting that DC 6354's assessment of how fatigue restricts routine daily activities is not objective evidence but "more general evidence" discussing "the impact upon employment or daily life"). This assessment does not require further definition like "very frequent" did in *Johnson v. Wilkie*.

The veteran also cites *Hood v. Brown*, 4 Vet.App. 301, 302 (1993), which dealt with the Board's failure to define a term that the Court found "qualitative" rather than "quantitative" in nature, *see id*. at 303. But he does not make any argument about whether the phrase "pre-illness level" is qualitative or quantitative, and so we will decline to address it. *See Locklear*, 20 Vet.App. at 416. Thus, Mr. Thornton has not shown that the Board erred when it did not define "pre-illness level." *See Hilkert*, 12 Vet.App. at 151.

### III. CONCLUSION

On consideration of the above, the appealed parts of the January 23, 2019, Board decision are AFFIRMED.


DATED: June 11, 2021

Copies to:

Kenneth M. Carpenter, Esq.

VA General Counsel (027)

## Certificate of Service

I certify that on the 10th day of January, 2022, the foregoing opening brief was electronically filed through CM/ECF system with the Clerk, United States Court of Appeals for the Federal Circuit. Copies of the document were served through the Court's CM/ECF system via the Notice of Docket Activity to:

Evan Wisser, Esq.
Department of Justice
Civil Division, Commercial Litigation Branch
evan.wisser@usdoj.gov

/s/ Kenneth M. Carpenter
Kenneth M. Carpenter
**CARPENTER, CHARTERED**
1525 SW Topeka Blvd, P.O. Box 2099
Topeka, Kansas 66601-2099
(785) 357-5251
carpgh@mindspring.com

## Certificate of Compliance

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, Appellant's counsel certifies that this Brief complies with the Court's type-volume limitation rules. This brief was printed in Garamond font at 14 points. According to the word-count calculated, using WordPerfect v.X6, this Brief contains a total of 7296 words, which is within the 14,000 word limit.

/s/ Kenneth M. Carpenter
Kenneth M. Carpenter
**CARPENTER, CHARTERED**
1525 SW Topeka Blvd, P.O. Box 2099
Topeka, Kansas 66601-2099
(785) 357-5251
carpgh@mindspring.com