No. 21-2329

IN THE

# United States Court of Appeals for the Federal Circuit

NORMAN F. THORNTON,

*Claimant-Appellant,*

*v.*

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS,

*Respondent-Appellee.*

On Appeal from the United States Court of Appeals for Veterans Claims
No. 20-882, Judge Joseph L. Falvey, Jr.

## BRIEF OF MILITARY-VETERANS ADVOCACY INC. AS AMICUS CURIAE IN SUPPORT OF APPELLANT

John B. Wells
MILITARY-VETERANS ADVOCACY INC.
P.O. Box 5235
Slidell, LA  70469-5235

Melanie L. Bostwick
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005
(202) 339-8400

*Counsel for Amicus Curiae*

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number**     21-2329

**Short Case Caption**     Thornton v. McDonough

**Filing Party/Entity**     Military-Veterans Advocacy Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/20/2023

Signature:     /s/ Melanie L. Bostwick

Name:     Melanie L. Bostwick

i

| 1. Represented Entities.<br>Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest.<br>Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders.<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Military-Veterans Advocacy Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑   None/Not Applicable          ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☐   No   ☑   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES .................................................................... v

STATEMENT OF INTEREST ................................................................. 1

INTRODUCTION ..................................................................................... 2

ARGUMENT ............................................................................................ 3

    I.    The Benefit of the Doubt Rule Has Played a Critical
        Role in the History of Judicial Review in Veterans'
        Benefits Cases. ........................................................................... 3

        A.    VA's failure to afford veterans the benefit of the
                doubt drove the push for judicial review. ..................... 5

        B.    The Veterans Court's deferential treatment of VA
                rulings drove the creation of the obligation to
                "take due account" of the agency's application of
                § 5107(b). .................................................................... 10

    II.    This Court Should Give Effect To Congress's Intent In
        Interpreting § 7261(b)(1).................................................... 12

CONCLUSION ....................................................................................... 15

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. City of Bessemer City,*
  470 U.S. 564 (1985) ...................................................................... 14

*Inhabitants of Montclair Twp. v. Ramsdell,*
  107 U.S. 147 (1883) ....................................................................... 3

*Lynch v. McDonough,*
  21 F.4th 776 (Fed. Cir. 2021) ...................................................... 14

*Sharp v. United States,*
  580 F.3d 1234 (Fed. Cir. 2009) ..................................................... 3

*United States v. Hasting,*
  461 U.S. 499 (1983) ...................................................................... 15

**Statutes**

38 U.S.C. § 211(a) (1988) .................................................................. 5

38 U.S.C. § 5107(b) ....................................... 1, 2, 3, 10, 12, 14, 15

38 U.S.C. § 7261 ........................................................................ 9, 12

38 U.S.C. § 7261(a) ............................................................ 2, 11, 13, 15

38 U.S.C. § 7261(a)(4) .......................................................... 11, 13, 14

38 U.S.C. § 7261(b) .............................................................. 13, 14, 15

38 U.S.C. § 7261(b)(1) .................................... 2, 3, 12, 13, 14, 15

38 U.S.C. § 7261(b)(2) ............................................................ 12, 15

Act of Mar. 20, 1933, Pub. L. No. 73-2, 48 Stat. 8 .................................. 5

Pub. L. No. 100-687, 102 Stat. 4105 (1988) .............................................. 9

Veterans Benefits Act of 2002, Pub. L. No. 107-330, 116 Stat. 2820 ............................................................................... 12

## Rules and Regulations

38 C.F.R. § 3.102 ...................................................... 4, 7

50 Fed. Reg. 34452 (Aug. 26, 1985)................................ 4

## Legislative Materials

134 Cong. Rec. S16632 (Oct. 18, 1988) ......................... 9

148 Cong. Rec. H8925 (Nov. 14, 2002)...................... 11, 12, 13

H.R. 5288, 100th Cong. (1988) .............................. 8, 9

*Judicial Review Legislation: Hearing on S.11 and S. 2292 Before the S. Comm. on Veterans' Affairs*, 100 Cong. 6 (1988).................................................................... 8

*Judicial Review of Veterans' Affairs: Hearing Before the H. Comm. on Veterans' Affairs*, 100th Cong. 60 (1988) ..................... 7, 8

*Oversight Hearing on the Board of Veterans' Appeals: Hearing Before the Subcomm. on Compensation, Pension and Insurance of the H. Comm. on Veterans' Affairs*, 100th Cong. 102 (1988) .................................... 8

S. Rep. No. 96-178 (1979) .................................... 7

S. Rep. No. 107-234 (2002) ............................... 10, 11

*VA Administrative Procedure and Judicial Review Act: Hearing on S. 364 Before the S. Comm on Veterans' Affairs*, 95th Cong. 19 (1977)............................... 6, 7

## Other Authorities

Comment, *Judicial Review and the Governmental Recovery of Veterans' Benefits*, 118 U. Pa. L. Rev. 288 (1969) ..................... 5

# STATEMENT OF INTEREST[1]

Military-Veterans Advocacy Inc. (MVA) is a non-profit organization that litigates and advocates on behalf of service members and veterans. Established in 2012 in Slidell, Louisiana, MVA educates and trains service members and veterans concerning rights and benefits, represents veterans contesting the improper denial of benefits, and advocates for legislation to protect and expand service members' and veterans' rights and benefits. It also provides continuing legal education to attorneys practicing in the field of veterans' and service members' rights and benefits.

As the panel recognized at oral argument, this case presents an important question regarding the scope of judicial review for veterans' benefits decisions.  In making those decisions, the Department of Veterans Affairs is supposed to "give the benefit of the doubt to the claimant" when evidence on a material issue is in "approximate balance."  38 U.S.C. § 5107(b).  Congress has repeatedly (and rightly)

---

[1] No party's counsel authored this brief in whole or in part. No party, party's counsel, or any person other than amicus or its counsel contributed money intended to fund preparing or submitting this brief. All parties have consented to the filing of this brief.

expressed concern about VA's compliance with this directive. That concern was a motivating factor for establishing judicial review of VA decisions in 1988. And, when the new court was not using its review power to the extent Congress intended, Congress acted to ensure full judicial oversight of § 5107(b). MVA has an interest in ensuring that 38 U.S.C. § 7261(b)(1) is interpreted consistently with Congress's intent.

## INTRODUCTION

The Court has requested briefing addressing three questions: (1) whether (and what) "further analysis" is required by § 7261(b)(1), beyond that specified in § 7261(a); (2) how the Veterans Court can satisfy § 7261(b)(1) if no factual findings are challenged on appeal; and (3) whether (and why) the Veterans Court must "satisfy section 7261(b)(1)" if the parties do not present an issue on appeal "regarding the application of section 5107(b)." Dkt. 34 at 2; *see* Dkt. 38; Dkt. 39.

MVA respectfully suggests that the Court's analysis in this case may benefit from a fuller understanding of the history and purpose of § 7261(b)(1). The story of how § 7261(b)(1) came to be—and the story of judicial review of veterans' benefits cases more generally—makes clear that Congress intended this statute to have meaningful effect.

Consistent with Mr. Thornton's arguments, Congress wanted the Veterans Court to carefully superintend the agency's compliance with the benefit-of-the-doubt rule codified in § 5107(b). Congress quite plainly did not want § 7261(b)(1) to be the meaningless surplusage that the Secretary's argument contemplates. This Court should give effect to the words that Congress used and ensure that the Veterans Court is empowered to "take due account of the Secretary's application of section 5107(b)" in the way that Congress intended. 38 U.S.C. § 7261(b)(1); *see Inhabitants of Montclair Twp. v. Ramsdell*, 107 U.S. 147, 152 (1883) ("It is the duty of the court to give effect, if possible, to every clause and word of a statute …."); *Sharp v. United States*, 580 F.3d 1234, 1237 (Fed. Cir. 2009) ("To determine Congress' intent, we use the traditional tools of statutory construction, beginning with the text of the statute.").

## ARGUMENT

### I. The Benefit of the Doubt Rule Has Played a Critical Role in the History of Judicial Review in Veterans' Benefits Cases.

There may be no more fundamental concept in the system of veterans' benefits than the one at issue here: that the veteran, not the government, receives the benefit of the doubt in a close case.

According to VA itself, this policy dates "back to the post-Civil War era when determining the extent of a veteran's disability … was done on a case-by-case basis by Bureau of Pension physicians." 50 Fed. Reg. 34452, 34454 (Aug. 26, 1985). A nineteenth-century Bureau document, for example, reported that, "[s]o far as it was permissible under the laws …, the benefit of any doubt has been resolved in favor of the claimant." *Id.* (citing Report of Medicine Division, Bureau of Pensions (July 26, 1899)) (first alteration in original). Following World War I, the first-ever disability rating schedule mandated the same approach: "Wherever a question of doubt arises the benefit of such doubt must be given to the claimant." *Id.* (quoting 1921 rating schedule). And, just a few years later, the General Counsel of the Veterans Bureau—the immediate predecessor of the modern VA— opined on the same policy and its application. *See id.* This policy has persisted ever since in the formal regulations that govern VA's adjudication of benefits claims; it appears today in 38 C.F.R. § 3.102.

But however well-established it is as a policy matter, in practice the benefit of the doubt has proved illusory for many veteran claimants. Indeed, concerns about the agency's failure to adhere to this policy were

a driving factor behind the extended legislative effort to provide for

judicial review of VA benefits decisions.  Congress responded to these

concerns by codifying the rule into statute and establishing the Court of

Appeals for Veterans Claims.  *Infra* Part A.  And, when reports arose

that the agency *still* was not giving veterans the benefit of the doubt,

Congress acted again to ensure that VA's application of this rule was

subject to full and meaningful judicial scrutiny.  *Infra* Part B.

### A.    VA's failure to afford veterans the benefit of the doubt drove the push for judicial review.

From the time the VA was created, judicial review of its decisions

was barred by statute.  Comment, *Judicial Review and the

Governmental Recovery of Veterans' Benefits*, 118 U. Pa. L. Rev. 288,

288 (1969).[2]  After several false starts, the legislative push that would

overturn this bar began in the 1970s in the wake of the Vietnam War.

From the outset, advocates of reform cited VA's failure to comply

with its own benefit-of-the-doubt rule as a reason why judicial oversight

---

[2] Act of Mar. 20, 1933, Pub. L. No. 73-2 § 5, 48 Stat. 8, 9 ("All decisions rendered by the Administrator of Veterans' Affairs … shall be final and conclusive on all questions of law and fact, and no other official or court of the United States shall have jurisdiction to review"); *see* 38 U.S.C. § 211(a) (1988) (VA decisions on questions of law or fact "shall be final and conclusive and may not be reviewed … by any court").

was necessary.  VA Administrator Max Cleland told Congress in 1977 that "[i]t has always been the policy of this agency to … resolve all reasonable doubt in favor of the claimant." *VA Administrative Procedure and Judicial Review Act: Hearing on S. 364 Before the S. Comm on Veterans' Affairs*, 95th Cong. 19 (1977).  But a wealth of testimony told a far different story.  Veterans' service organizations recounted their own experience with the agency, in which the benefit of the doubt was "seldom" given to the veteran.  *Id.* at 269 (statement of Edwin L. Meyers, Veterans of Foreign Wars); *see also id.* at 267 (statement of John Edgar Williams, Disabled American Veterans) (citing "in the case of any arthritis cases failure to give the veteran the benefit of the doubt in service connection").  Veterans' attorneys testified to the same problem.  *See, e.g.*, *id.* at 517 (statement of Fredric J. Gross) (stating that "[t]he 'reasonable doubt' doctrine" was "occasionally turned on its head, a heavy burden of persuasion being cast upon the claimant"); *id.* at 473 (testimony of Carlos M. Soler-Calderon) (VA has "reject[ed] the grant of the reasonable doubt in favor of veterans, and rather appl[ied] said doubt against such veterans").  The legislative director of Paralyzed Veterans of America urged

Congress to provide some form of judicial review to make it "evident to the VA that they are still bound by the regulation (38 C.F.R. § 3.102 (1972)) to grant a veteran's claim unless a reasonable doubt exists as to its validity." *Id.* at 449-50 (statement of Lawrence W. Roffee, Jr.).

The Senate responded with a bill that would not only allow civil actions challenging VA determinations but would also codify the benefit of the doubt rule into statute. *See* S. Rep. No. 96-178, at 9, 13 (1979). The Senate Committee on Veterans' Affairs found VA's regulatory language "difficult to follow," *id.* at 27, so the Committee simplified it by adopting the "approximate balance" formulation that appears in the statute today. *See id.* at 9 (§ 3007(b)). The Senate ultimately passed this bill—and several subsequent versions—but the legislation repeatedly failed to pass the House.

Ten years later, VA's compliance with the benefit-of-the-doubt rule continued to be a concern. In hearings held in 1988, the same message came through: VA was "systematically antagonistic to the veteran," and "[t]here is a failure to accord a reasonable doubt in favor of the veteran." *Judicial Review of Veterans' Affairs: Hearing Before the H. Comm. on Veterans' Affairs*, 100th Cong. 60 (1988) (statement of

Rick O'Dell, Vietnam Veterans of America).[3]  Indeed, the evidence before Congress included a statement from a former member of the Board of Veterans Appeals who recounted being told "that I was too allowance-prone, and that it was preferable to deny a case, when in doubt, than to allow it."  *Oversight Hearing on the Board of Veterans' Appeals: Hearing Before the Subcomm. on Compensation, Pension and Insurance of the H. Comm. on Veterans' Affairs*, 100th Cong. 102 (1988) (statement of Vietnam Veterans of America, Inc.) (quoting letter of unnamed retired Board member to Gordon Erspamer, July 19, 1987).

Shortly after these hearings, the bill that would finally lead to the Veterans Judicial Review Act was introduced in the House.  H.R. 5288, 100th Cong. (1988).  The bill provided for the establishment of a "Court of Veterans Appeals" that would take the place of the Board of Veterans Appeals and would "have exclusive jurisdiction" to review VA benefits

---

[3] *See also*, *e.g.*, *id*. at 57 (Rep. Evans) ("[A]nd when the veteran service officers, themselves, feel that this is a case in which all reasonable doubt has not been given to the veteran …, just what do we do with those cases?  Say that there's not a system for those people despite the strong evidence in their case?"); *Judicial Review Legislation: Hearing on S.11 and S. 2292 Before the S. Comm. on Veterans' Affairs*, 100 Cong. 6 (1988) (statement of Susan D. Bennett, clinical law professor) (testifying that the benefit-of-the-doubt rule "is only applied it seems when the overwhelming weight of evidence, in fact, supports the veteran").

decisions. *Id.* § 4002. It would also codify the benefit-of-the-doubt rule, using the same language as the earlier Senate bills. *Id.* § 3003.

The House and Senate worked out a compromise between H.R. 5288 and the latest iteration of the Senate proposal. *See* 134 Cong. Rec. S16632, S16638 (Oct. 18, 1988). This compromise created the benefit-of-the-doubt statute as contemplated by both houses of Congress. *Id.* at S16639-40; *see also id.* at S16659 (Senator Murkowski calling this provision "[t]he most significant" of the VA practices being codified). And it established the Court of Veterans Appeals as an Article I tribunal "with jurisdiction to review, on the record, all aspects of a claim for benefits as decided by the BVA." *Id.* at S16639. The "scope of review" provision—predecessor to 38 U.S.C. § 7261—directed the new court to "hold unlawful and set aside decisions" that it found to be unlawful and, "in the case of a finding of material fact," to "hold unlawful and set aside such finding if the finding is clearly erroneous." Pub. L. No. 100-687, § 4061(a), 102 Stat. 4105, 4115 (1988). It also instructed that, "[i]n making the determinations under subsection (a) of this section, the Court shall take due account of the rule of prejudicial error." *Id.* § 4061(b).

**B.    The Veterans Court's deferential treatment of VA rulings drove the creation of the obligation to "take due account" of the agency's application of § 5107(b).**

The hope that codification and judicial review would lead to more vigorous enforcement of the benefit-of-the-doubt rule was not fulfilled. More than a decade into the tenure of the new court—renamed the Court of Appeals for Veterans Claims in 1999—claimants and their representatives were still finding that VA often refused to resolve doubt in favor of the veteran.  And the court appeared reluctant to exercise its authority to fix the problem.  According to the Senate Veterans' Affairs Committee, VSOs had "voiced frustration with the perceived lack of searching appellate review of BVA decisions."  S. Rep. No. 107-234, at 17 (2002).  The Veterans Court, they argued, afforded a "large measure of deference" to the Board's factfinding, which "may result in failure to consider the 'benefit of the doubt' rule in 38 U.S.C. § 5107(b)."  *Id.*

The Committee proposed to address the problem by adopting a less stringent standard of review for factual issues.  In place of the clear error standard, this proposal would have the Veterans Court ask whether factual findings were "unsupported by substantial evidence of record, taking into account the Secretary's application of section

5107(b)." *Id.* at 40 (amending 38 U.S.C. § 7261(a)(4)). The Committee also proposed to make clear that the Veterans Court could do more than remand, directing the court to "set aside *or reverse*" improper fact-findings. *Id.* (emphasis added). These changes, the Committee believed, would "give full force to the 'benefit of the doubt' provision," requiring "substantial deference" to findings "based on demeanor evidence," but allowing for "searching judicial review of VA benefits claims encompassing the 'benefit of the doubt' rule." *Id.* at 17-18.

The Senate passed this version of the legislation, but changes were made in the House. The resulting compromise bill reinstated the clear error standard of review for Board fact-findings. But it retained the proposal to expressly afford the Veterans Court the ability to "reverse"—not just "set aside"—erroneous factual determinations. 148 Cong. Rec. H8925, H9002 (Nov. 14, 2002) (Section 401(a)). And it introduced the language at the heart of this appeal.

Congress intended the compromise bill to "modify the requirements of the review the [Veterans] Court must perform when it is making determinations under section 7261(a)." *Id.* at H9006. The bill therefore directed the Veterans Court, in making "determinations

under subsection (a)" of § 7261, to "review the record of proceedings before the Secretary *and* the Board of Veterans' Appeals." *Id.* at H9002 (Section 401(b)) (emphasis added). It placed the prejudicial error provision into a new § 7261(b)(2). And it added § 7261(b)(1), directing the Veterans Court to "take due account of the Secretary's application of section 5107(b) of this title." *Id.* These changes, Congress explained, would "provide for more searching appellate review of BVA decisions" and ensure "special emphasis during the judicial process on the benefit of the doubt provisions of section 5107(b)." *Id.* at H9006. These compromise provisions were enacted into law as part of the Veterans Benefits Act of 2002, Pub. L. No. 107-330, 116 Stat. 2820, 2832.

## II.     This Court Should Give Effect To Congress's Intent In Interpreting § 7261(b)(1).

The statutory text and the history set out above both make clear that the Secretary's argument in his supplemental brief is wrong. The Secretary assigns two supposed purposes to § 7261(b)(1): "authoriz[ing] the Veterans Court to reverse the Board's decision where appropriate" rather than remanding, and allowing the court to rely "on any indisputable factual bases evident in the record," not merely those facts cited by the Board. Dkt. 39 at 3-4. Both of those purposes, however,

are fulfilled by separate language added in the 2002 legislation.  It is the change to § 7261(a)(4) that gives the Veterans Court explicit authority to "set aside *or reverse*" factual findings. (Emphasis added). And it is the language in § 7261(b)—not its subsections—that directs the Veterans Court to "review the record of proceedings" as a whole. The court must perform that review "*and … take due account*" of the benefit-of-the-doubt rule.  38 U.S.C. § 7261(b) (emphasis added).  The Secretary fails to give subsection (b)(1) any separate meaning.

The history of § 7261(b)(1) shows that Congress intended this provision to "modify" the review already required under § 7261(a), and that this additional review was mandatory.  148 Cong. Rec. at H9006 (describing review the court "must perform").  Whether or not the veteran specifically argues a failure to afford the benefit of the doubt, the Veterans Court must consider whether the Secretary and the Board complied with that obligation as it analyzes the arguments that were raised.  When the appellant directly challenges factual findings, this means that the Veterans Court must apply the clear error standard of review with the benefit-of-the-doubt rule in mind.  In the ordinary case, "[w]here there are two permissible views of the evidence, the

13

factfinder's choice between them cannot be clearly erroneous."
*Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).  But in the
unique context of veterans' benefits cases, it *is* clearly erroneous for the
agency to side with the government in such circumstances.  *See Lynch
v. McDonough*, 21 F.4th 776, 781 (Fed. Cir. 2021) (en banc).

Even if a veteran's appeal raises a legal or procedural issue,
however, § 7261(b)(1) must still guide the Veterans Court's analysis.
Unlike the Senate Committee proposal, which would have specifically
tied the consideration of § 5107(b) to factual review under § 7261(a)(4),
*see supra* 10-11, the language Congress adopted is not so limited but
applies broadly to "the determinations under subsection (a)."  38 U.S.C.
§ 7261(b).  The Court has asked what this review might look like.  One
example would be a veteran who attempts to prove both presumptive
and direct service connection for disability linked to toxic exposure.
Being denied both, the veteran argues on appeal that the Board erred
as a legal matter in rejecting presumptive service connection.  In
reviewing the record of proceedings—as required by § 7261(b)—the
Veterans Court might see that the Regional Office rejected direct
service connection by resolving a balanced evidentiary record against

14

the veteran.  Section 7261(b)(1) would empower the Veterans Court to correct that violation of § 5107(b).

The Court asks what authority permits the Veterans Court to address such issues that the veteran has not raised.  One answer is the statute itself: § 7261(b), unlike § 7261(a), is not limited to issues that are expressly "presented."  Another answer is the parallelism with the prejudicial error analysis required by § 7261(b)(2).  That provision obligates the Veterans Court to consider whether any error it finds was prejudicial.  *See United States v. Hasting*, 461 U.S. 499, 509 (1983) ("[I]t is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless.").  And § 7261(b)(1) makes it the duty of the Veterans Court to ensure that any finding it upholds is consistent with the benefit-of-the-doubt rule.

## CONCLUSION

The Court should hold that the Veterans Court is obligated to take due account of the Secretary's and the Board's compliance with § 5107(b) when performing its review under § 7261(a).

15

April 20, 2023

Respectfully submitted,

*/s/ Melanie L. Bostwick*

John B. Wells
MILITARY-VETERANS ADVOCACY INC.
P.O. Box 5235
Slidell, LA  70469-5235

Melanie L. Bostwick
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005
(202) 339-8400

*Counsel for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of the December 19, 2022 order (Dkt. 34), Fed. Cir. R. 29(b), and Fed. Cir. R. 32(b), because this brief is 15 pages.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*

Melanie L. Bostwick
*Counsel for Amicus Curiae*